Oyez, Oyez, Oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention to the Court is now sitting. God save the United States and this Honorable Court. You may be seated. I want to welcome everyone to the Fourth Circuit Court of Appeals this morning. We have three interesting cases. I'm honored to be here with my friend Judge Richardson and my friend Judge Floyd. Our first case is Ibarra v. Garland, an immigration case. And is that Ms. Thwaites? Thwaites, Your Honor. Thwaites. Ms. Thwaites. I'm sorry for mispronouncing your name. That's quite all right. It's great to have you with us. Thank you. Good morning. May it please the Court. Whitney Thwaites on behalf of the petitioner. The issues for review in our contentions are as follows. One, the Board of Immigration Appeals, or the BIA, erred in finding that the petitioner failed to establish good moral character. And two, the BIA erred in finding that the petitioner's due process rights were not violated after counsel invoked the petitioner's Fifth Amendment rights against self-incrimination. Ma'am, if we go too far, what is the standard of review? Because I don't think the government's taking a position. What's your position? Your Honor, I believe the standard of review. I know that the Wilkinson case, and I'll get into that in my argument, does not establish a standard of review. I believe it's abuse of discretion. On which issue? As to both. As to both issues. Everything's abuse of discretion. That's what we contend, yes. Can I ask you about that just a little bit? So, Wilkinson says that it's a discretionary review, or deferential review is the word it uses. Yes, Your Honor. And I'm not sure any of this matters, but there are like a handful of options for what deferential review might look like. But we don't generally apply abuse of discretion, whatever that means, to agency action. We tend to view that either as arbitrary and capricious or for substantial evidence, which maybe is the same thing as abuse of discretion. I'm not saying that there's like a whole hill of beans difference here among these options. But help me understand why you use the term abuse of discretion, and do you think it matters as compared to calling it, you know, is the decision supported by substantial evidence, or is it arbitrary and capricious? Well, Your Honor, I believe the reason that I would say that it's an abuse of discretion standard is a lot to have to do with what's the transcript on the record on appeal. We believe the judge abused his discretion in the way he conducted the hearing. The substantial evidence standard... We don't review legal issues for abuse of discretion. If there's any legal issues here, it's got to be... Well, then, I mean, yes, I can understand that. The law is the law. Right. And IJ doesn't have authority, or... We don't have authority to... Discretionarily decide what it is. Yes, I would concede that, Your Honor. But the point of Wilkinson, the Supreme Court's decision in Wilkinson, is that we have a set legal standard, which we have here. Correct. And we have set facts because we can't review what the facts are. The application of the facts to a set legal standard is what they refer to as a mixed question of law and fact, and we review that with deference. Yes, and I will get to that. The question is, what does deference mean? I guess I'm just not aware of any instance in which a court reviewed an agency for abuse of discretion. It's sort of inconsistent with the manner in which we review agency action. We do that for courts because we directly supervise courts. We don't supervise, in any technical sense, agencies. We review whether their actions are lawful, but there's a distinction there, right? Yes, and I do think that the Wilkinson case does state that it is a deferential standard, but the question is, what does that mean? I think that there is an argument that they do have to give deference to the court, but how much deference are we looking at? And that's how I took it. It would be wonderful to have a de novo. Normally, a ruling like that, the Fifth Amendment issue here. Yes, Your Honor. It's the middle of a trial. A trial judge would get some discretion in making that kind of a ruling, perhaps. Would that be different in an IJ situation? If the trial judge had deference to… To decide… The constitutional issue? Well, it's the invocation of the Fifth Amendment. Right. I mean, I believe that in this situation, again, our argument is that the judge abuses discretion in denying the due process. He was saying the defendant here, the petitioner, has to assert it himself. Yes, Your Honor.  Yes, and I understand that. And that's actually my second argument on appeal. I know, but that might be a… Is the… But you said that it's abuse of discretion being applied to both issues. Right, well, I… And maybe you have to consider them separately. I'm sorry I asked that question. That's okay. I believe, so, my Fifth Amendment argument, there is case law on point. There's the Garcia-Quintero case, which is the Ninth Circuit Court of Appeals decision. And it doesn't say that counsel can assert the privilege for him, for the petitioner, but it does say that counsel can consult with the petitioner as to his Fifth Amendment rights. And I believe by the nature of immigration proceedings… You mean at a time the witness, the petitioner is on the witness stand? That's correct. Then he can consult with his lawyer? Yes, if the lawyer… Is that a… That's what happened in the Garcia case. Is that a mandate that's inflexible, or is that a discretionary call by the judge? I would contend that it's… I'm going to say that it's not mandated. However, the nature of immigration proceedings or such where there is a substantial language barrier and often a misunderstanding of the legal proceedings in the United States, that in this situation it calls for counsel to be able to consult, especially upon objection. Did counsel ask to consult? Counsel did not have the opportunity to ask to consult. This, on the record… If counsel objected, then counsel could say, also, well, I'd like to talk to my lawyer. It's not like he was, he wasn't like gagged, right? No, Your Honor. When you say he didn't have an opportunity to ask to speak to his client, like that doesn't seem right. And the client didn't ask to speak to him. I mean, I'm not sure what the answer is. If he had asked and the judge had said no, that would seem like a tough discretionary call. Where he doesn't ask and the client doesn't ask. I believe what happened in this case, and I'll refer to the transcript, the judge was actually taking over on the direct and asking the questions. Mr. Devine objected. Which we've said an I.J. is supposed to do. An I.J. has an obligation to develop the record. That's correct. But typically the way that it goes in immigration hearings is the counsel for the respondent gives direct examination, then opposing counsel crosses, and then the judge asks questions. The way this hearing went is the judge… The judge was asking questions and the witness took the fifth. The witness did not take the fifth in this case because counsel objected and said, I cannot allow my client… Counsel objected. Yes. And counsel says he wants to take the fifth? He says, I cannot allow my client to incriminate himself. Which is pretty much invoking the fifth. Yes, sir. And the client chose not to follow that advice. The client, yes, that's what happened in this case. The client just continued. But I don't think that the counsel was not given an opportunity to consult and explain it. And, again, there's often a misunderstanding of the procedure, you know, in the United States in immigration cases. Also, counsel didn't… Also, misunderstanding in, like, almost all proceedings, right? We understand that. But, you know, that's why we have lawyers there, right? So if he thinks that he needs to speak to his client, if he thinks there's a problem, it's his job to, like, say that. And he did object on multiple occasions. He continued to object to the line of questioning. And I believe, you know, he was giving deference to the judge because the judge was actually doing the questioning, for the most part, on these issues. I've got another question in that context. Maybe it's more appropriate for your colleague there when he gets up there. But the Justice Department's got a policy, or they used to have, that permitted lawyers to invoke the Fifth Amendment for targets or subjects of investigations by writing a letter to the U.S. attorney and saying, Would that mean that my client wouldn't, or whatever the letter would say? Would that kind of, I don't know whether it still exists or not, but if it exists, would that apply to immigration proceedings? They're part of the Justice Department. I believe so, Your Honor. I believe in this situation it wasn't anticipated that pending… Do the DOJ policies apply to the immigration judges? Yes, sir. And I believe some of those… Do you know what the policy is now? On the… On whether a lawyer who can say, I represent this person, and he invokes the Fifth Amendment. I believe the current case law… And the lawyer signs it as counsel for him and submits it to the United States attorney or the lawyer for the government. Is that sufficient to get him out of a subpoena, for example, or to keep him from answering questions or going any further? I honestly… The case law doesn't distinguish on that issue. So I honestly don't know if that would have worked in this situation. But the case law actually says that you can only invoke the Fifth Amendment question by question. Yes.  You can't… And the Department of Justice, I think it's totally fair, often sort of, you know, as a matter of grace, you might say, sort of accepts a lawyer and says, okay, we won't put you in the grand jury if you're just going to invoke. But to actually invoke the Fifth Amendment, you can't even do it as a blanket matter. You have to do it question by question. That's correct, Your Honor. So if you're in a hearing, whether that's a grand jury hearing or a court hearing, in order to invoke the Fifth Amendment, the witness has to say that particular question would incriminate me. And then the judge can make a judgment if somebody objects to that. But it's on a question by question basis. That's what we've said has to be done. Yes, and I understand that, Your Honor. Mr. Devine did object to an entire line of questioning. He said, you know, I object to this entire line of questioning, and I believe that that satisfies the question by question. But in this situation, the judge said, I will indulge, and then they continued to allow the testimony, which these were pending charges. And this could have had dire consequences for Mr. Iberra in criminal court, and Mr. Devine was representing him as to those issues in criminal court. So he was both the criminal attorney and the immigration attorney. I believe I only have a few minutes left. In a criminal trial, I mean, we often do in a criminal trial where it's time to testify or not, right, which is effectively in a criminal case, to invoke the Fifth Amendment or not. Don't we require the district court judge to get an answer from the defendant himself? We won't take the lawyer's word on it? Yes, and that is the general – generally, that's the practice. But we contend that – Is that what the law is? That's what the couch case says. That's what the – yes. What's that? It's a Supreme Court – Is that Supreme Court? Yes, it's a U.S. Supreme Court case. It's an individual right. But it's a tax case, and it's about document productions. I accept the representation of the lawyer. I believe lawyers. And that's what we – They're officers of the court. That's what we believe as well, Your Honor, and that's – That's my view, that lawyers are officers of the court, and they're going to tell the court the truth. Yes, and particularly in this case where Mr. Devine was representing the petitioner in immigration proceedings and in the criminal proceedings, and he continued to object. So, you know, therefore, we contend in this situation, just like in the Garcia case, where the judge in that case recognized the potential pitfalls in an immigration case when counsel is not allowed to consult with the client or assert a privilege for him, then, you know – Have we also done this in the context of, like, Miranda, right, that a lawyer can't invoke the right to remain silent, which is, like, yet a slightly different question, although not – I mean, you know, we're in the same ballpark that we've said a lawyer cannot invoke for a client. Well, I think oftentimes in those situations with Miranda, I mean, the police officers are – the lawyer's not present at that point when they're having to read the Miranda rights. In this case, this is a trial, so, you know, they're – the lawyer's there – I understand that it does come up sometimes where there's an investigation where a client is represented, the client is picked up, and the lawyer calls and tries to assert his client's Fifth Amendment rights. And we've, I think, said that you can't do that, right, that the lawyer can't invoke under Miranda the right to remain silent for the client, because it's the client's own right. That's correct, but I agree with Judge Keene. What I'm talking about is the policy of the Department of Justice is that the lawyer can invoke. Yes, and I agree with Judge Keene on this. And the immigration judges being part of the Department of Justice, are they – do those things apply? And I'm talking about at least targets, subjects of grand jury investigations, are not supposed to be taken into the grand jury if the lawyer says, my client is going to take the Fifth or he takes the Fifth. The lawyer signs it. They're supposed to accept it. That's the way it used to be. And I've never heard of it being changed. I don't believe it has, Your Honor, and I believe that same situation would apply in this setting in an immigration proceeding. And I see that my time has expired, so I thank you. That concludes our argument at this point. I'll be back for rebuttal. Thank you. You've saved some time. Mr. Tennyson? Thank you. Good morning. May it please the Court. I think I'll start right off by saying I'm not aware of the – I hadn't thought about the policy, but from the way you describe it, it has to do with grand jury proceedings and whether or not someone will testify in grand jury proceedings and whether or not – Maybe it's limited to grand jury proceedings. Does it include witnesses? I don't know anything about the policy, but I was just going off of what you said, that it applied to grand jury proceedings. But let's assume that it is supposedly broader. Do you do – I mean, I don't want to ask you questions of this. Do you do any criminal work? No, I don't do any criminal work. It's just purely immigration work, so I've never looked – so I've never seen this before. I've not come across it. But there's a difficulty, if that were the case, because if you could – No, but everybody's working for the Justice Department. Everybody's working for the Justice Department. And we have a lot of policies. Maybe not seen them all. But the thing is – And I'm telling you, that's been the policy for 40 or 50 years. Right. Unless it's changed. Right. And has this been – It may not have been for the entirety of 50 years. Right. I'm more familiar with the recent vintage and I'm not sure about that policy. Well, I was in the U.S. Attorney's Office more than 50 years ago. Right. Okay. Did it apply to – That's the way we operated. The way you operated, it applied to people who were going into grand jury? That was the way – that was the Department of Justice policy. Right. Oh, interesting. So let me look into it. I can definitely see what that – I'm not saying it has anything to do with this. I think trial judges have a lot of discretion, too. Right. But then that's maybe what's standard to review. Right. Oh, okay. But they do have a lot of discretion. And if you look at the instances in which the petitioner actually says something about the criminal charge having to do with his title, in the first instance it's invoked – well, in the first instance invoked by his attorney, the immigration judge responds by being kind of careful and asks, well, what are the charges? That's not – that doesn't have anything to do with what he did. It has to do with the charges. And he answers. And then the immigration judge follows up with, was that your car? And he says yes. And then he moves on. The second instance in which it comes up, again, the attorney – when the lawyer for the government, for Department of Homeland Security, asks about the mortgage or what, his mortgage or obtaining a driver's license. And, again, he invokes the privilege. And the immigration judge allows it in discretion because those aren't questions that have to do with – those are questions that have to do with the prior criminal proceeding against him in federal court. And aren't related to the title charge. In a civil proceeding like this, were he to have invoked the Fifth Amendment and refused to answer the questions, could the IJ draw a negative inference from that? Oh, yes, Your Honor. And so, you know, a reasonable client here might say, you know, what really matters to me most is the immigration issue. It's not this, you know, criminal charge. That is correct. And if that's the case, I mean, on the third time he's asked, he's not asked about the charge. He's asked, how did you end up in, you know, how did you end up getting detained in the first place? And he says, oh, well, I was stopped because I had the fraudulent title and registration in my car. And the immigration – his counsel doesn't say anything. He doesn't offer the Fifth Amendment. You know, he doesn't offer the Fifth Amendment right. Did either the witness or the lawyer ever ask for the right or an opportunity to consult? No, Your Honor. He never did. Well, we don't know what the judge would have said at that point. We have no idea what the judge would have said at that point. So he was an ineffective assistance client. Perhaps. But we'll leave that to a motion to reopen by him before the BIA. So moving on from the Fifth Amendment issue, back to whether or not the agency erred in finding that he lacked good moral character. In the standard of review, the government's position is that it's substantial evidence. Why not? Can you help me understand why it's not abuse of discretion? Right. I mean, we had originally argued that it was discretionary because it seemed to have all of the multifactored approach that cancellation of removal – I mean, that hardship did in cancellation of removal, right? You look at the activities that the individual was engaged in over the prior 10 years, the positive and negative equity, you know, positive and negative aspects of their character, whether they've engaged in any crimes, and then you sum it up to determine whether or not you have good moral character or a lack thereof. And while that looked discretionary to us pre-Wilkinson, post-Wilkinson, that same sort of multifactor analysis you have for exceptionally extremely unusual hardship was found to be, you know, was found to be a legal question, a mixed question of law and fact. And once we move into that territory, especially considering that, as the court noted in Wilkinson, the prior standard was given more to the discretion of the agency. The subsequent standard with exceptionally extremely unusual hardship seemed more clearly the application of legal standard. Whereas with good moral character, it's always been sort of a flat standard, even, you know, dating back to pre-INA days. And so for the same reasons that we would say exceptionally extremely unusual hardship is the sort of legal question, even if it is multifactored and extremely factual in nature, that the exceptionally unusually unusual hardship standard would be reviewed for an abuse of discretion. We think that good moral character should be reviewed. Or under the catch-all provision, good moral character should be reviewed the same way. And wait, you just said as abuse of discretion, you meant? Substantial evidence, not abuse of discretion. Although if this court goes with abuse of discretion, we're perfectly fine with that. We think the two are very similar. What's your position? What's the Justice Department's position? Substantial evidence review. Substantial evidence. That is correct. But you just said. Right. Like you didn't care. Oh, no. The thing is, is that we would prefer substantial evidence. You prefer substantial evidence. We prefer substantial evidence. But that's not your hard and fast position. That's not a hard and fast, no. As long as we get a deferential standard. I mean, I guess maybe why you're saying you don't care is back to the sort of principle of like, is there a meaningful difference? I mean, the thing is, is that irrationality under, one would assume that irrationality under the abuse of discretion standard, you know, that the immigration judge act irrationally or contrary to law, is very similar. If you're going to have an immigration judge acting irrationally and reviewing the evidence, that by the same token, any reasonable fact finder would look at that evidence and find that, you know, that they would be compelled to find a different result. We think that there's not really much daylight between the two. But applying substantial evidence to this case, I mean, the petitioner in this case maintained a scheme, you know, under which he assumed a fraud, I guess what, a fraudulent identity of another individual, a citizen, for a period of five years, two of them within the 10-year good moral character period. And a reasonable fact finder would not be compelled to conclude that given that, you know, that fraud, that an individual, that a petitioner, you know, possessed good moral character. If this Court has no further questions about this, the government will rest. Well, I don't quite understand how, based on what you said, where's the bad moral character in this case? Well, you say he didn't have good moral character. Why? Why does he have poor moral character? You haven't told me a thing. The reason why is because he used someone else's identity to engage in a scheme of fraud for five years to obtain not only a Social Security card, but a driver's license, a mortgage, homeowner's insurance, a, let's see, tags entitled to a car. All of these things he did by adopting another person's identity, fraudulently so, the identity of a citizen. And he got criminally convicted, although not of that charge. But that brought him to the attention of the – Wait, actually the charges were dismissed. The charges were dismissed. Well, the charges were pled down. With the federal charge, he got – No, illegal entry is not a lesser included of what he was charged. Illegal entry was not a lesser included of what he was charged. Right. He pled to a different charge. But if you look at the actual criminal charge that he pled to with the tags entitled are in the record. I don't – it's not in this – let me see if I've got it here. If you look at – let's see, it's at the back here. He eventually offers the criminal records that come after his proceedings. And in those proceedings, he pleads down to a lesser charge on the fraudulent title. But beyond that, if you look at the final paragraph of 1101F, where there's the catch-all provision, behind the sort of statement that says, just because we have these now eight other things listed here, that doesn't preclude another finding that an individual lacks good moral character. And then there's a but. And the but provision, there's this long sentence that says, but if you've got an individual who was a child at the time and who made a false – who made a false statement of citizenship or a false statement regarding the same, but both of that person's parents were citizens and he did so under the – he did so reasonably believing that he was a citizen, then that's not, you know, that's not an instance of bad moral character. But the implication of that is that for someone who's an adult, who makes that kind of a statement about their being a citizen, who, you know, who did not have any reasonable basis to believe that they were a citizen, that it's perfectly fair game for an immigration judge to conclude that that fraudulent assertion of citizenship is an example of bad moral character. For that reason, this court should find that the immigration judge did not – you know, that no reasonable find or fact would be compelled to find that this petitioner displayed good moral character. Or to put it differently, substantial evidence supports the determination that the petitioner in this case lacked good moral character. Now, were you saying then that the standard of view on the first issue is substantial evidence? Substantial evidence. And on this Fifth Amendment issue, it's abuse of discretion? I think considering that it's – I believe that since petitioner is arguing for a legal standard, and that is the application of some standard that the – that, you know, counsel for a petitioner in immigration proceedings should be able to consult with their client while on the stand, and that the failure to allow him to do so is a Fifth Amendment violation, that sounds like a legal question to me. And that would be – Well, he said they didn't ask to consult. He never asked to consult. Right. Right. And that was up to the discretion of the immigration judge as to how to conduct proceedings. I understand it's an abuse of discretion. So I would say as to what he did and how the immigration judge interpreted it would be – I'm just trying to get the government position straight here. Right. In case we agree with it, then you all are going to be stuck with it. The government is. That's going to be the standard of review. So if it's – if it goes – In the next case and the case after that and all that. Right. I think that insofar as this can be divided up and their argument can be divided up – Do you need to check this out with the Solicitor General or anything? I think that – Or the Department? Right. I think that our review is that this is a de novo constitutional issue broadly, right? And if it's a constitutional legal issue, to the extent that we're talking – it's within the compass of that, that's de novo. If it's just a pure question of – The question is the law or de novo. Right. Exactly. Questions of law are de novo, and constitutional questions are de novo. Right. And insofar as they're trying to parcel out some particular constitutional right with regard to consultation, that is a de novo question. If we're just asking about, you know, did the petitioner waive this? That's also – I believe that the waiver issue is something this Court can resolve de novo as well. But if it's a question about how the immigration judge conducts proceedings broadly, and it doesn't, you know – And we no longer have – Well, but their claim is just under the Fifth Amendment. It's just under the Fifth Amendment. The Fifth Amendment doesn't require the district court – or, excuse me, the immigration judge to run his proceedings in any given way. Right. If he runs his proceedings in a way that violates the Fifth Amendment, well, that's a Fifth Amendment problem. Right. Exactly. And we don't take up a constitutional question if we can avoid it. That is true. And this Court can avoid it by just saying that the petitioner waived it. What's the case that deals with avoiding constitutional questions? Oh, right. So, gosh, I can't remember. But there are a few. There are some – not Zavadas. There are a series of subsequent – Ashwander is the one you're looking for. Thank you. It's Judge King's favorite case, which is why I mentioned it. All right. And we hardly ever find any lawyers that recognize him. Oh, okay. I should – No, you would be the real exception. If I had said – If I had said – I know all about Ashwander. 1936 case. Some Supreme Court judge. Got it. But that's the constitutional avoidance doctrine. Right. I know – You can't decide constitutional questions except as a last resort. Very good. Basically. Right. I know there are some recent decisions on that, particularly in the detention context. So if it's an evidentiary question, we review it for abuse of discretion. We review it for abuse of discretion. That's what judges do. Right. Judges get some discretion in ruling or whatever. Right. And I think that insofar as – Do we review abuse of discretion? Do we do that? I mean, I don't – I don't like run this down, but we don't typically review agencies for abuse of discretion. I think – Well, okay. It depends upon the circumstances. It's always submitted to their discretion, right? We don't have jurisdiction to review it. You don't have jurisdiction over it. Right. Right. And so it's odd to talk about that. We talk about something being arbitrary or capricious.  We talk about substantial evidence. Are there examples where we, like, correctly apply, quote-unquote, abuse of discretion as the standard to review to an agency? Right. I would – I'm not going to commit myself, but I wouldn't be surprised if this court applies abuse of discretion to denials of motions to reopen and motions for reconsideration. Because those are both ultimately discretionary determinations. But they're not ones that are taken out – Which ones do you think? I don't know. But I – I'm not sure that's true, but I'll look at that. Motion to reopen and which – Right. And motions for reconsideration. Or denials of a continuance. We've heard of this hearing as a trial. A judge at a trial gets reviewed for abuse of discretion. Right. I mean, we're not reviewing them. The BIAs had to review them first. Right. BIA reviews first. But they review either at – for purely factual questions for clear error and everything else de novo. So essentially it's a flow-through. But a – the denial of a continuance. A continuance is something else this Court can review. So, you know, various aspects of the procedure of immigration procedures have been reviewed by this Court before. I – I can go and find out whether those are reviewed for abuse of discretion or not. I would be surprised if they aren't. Especially considering that they're outside of the statutory bar for discretionary matters over which this Court lacks jurisdiction. But if this Court has – doesn't have any further questions, the government will rest. Absolutely right. Thanks very much. Thank you. Mr. Jamison. Ms. Slates. Thank you, Your Honor. A few things. I want to start off by saying that the initial issue in this case was a jurisdiction question. And I think that we've established that this Court has jurisdiction under Wilkinson to review the good moral character analysis. I don't believe the government even argued that they don't. They do in their brief, but he didn't argue today that there is no jurisdiction. So I do believe under the code that jurisdiction is restored in this case. And this Court does have jurisdiction to review. Also, as to the standard of review, there's no case law on point to support a substantial evidence standard of review. So we disagree that that should be the standard of review. That's the highest discretionary form. There's no case law saying that that should be the standard. Why is that like – why is that different in your mind? I guess I'm not totally certain it's different. We tend to review these questions for substantial evidence, right, in all the other immigration contexts. Maybe these motions to reopen are different. Maybe they are abuse of discretion. I'm just not certain about that. But that's like a particular discretionary decision. When we're trying to figure out, like, is there evidence that supports a legal conclusion in an immigration context? Every example I can think – which is the question we have here, right? If you fail to show moral character, that seems to me to be a substantial evidence question. I think that the reason that I'm arguing that it's not is that is the highest standard. But if the Court is going to review it under substantial evidence, I do want to get to some of the facts of the case. I believe Judge Floyd pointed out that the petitioner did not plead to anything to do with the Social Security fraud. That charge was completely dismissed by the U.S. Attorney's Office. He pled to unlawful entry, which is a charge that virtually everybody in removal proceedings is charged with. And that was the charge. Does finding good moral character require a conviction? Imagine he's not convicted of anything. Can the IJ determine that someone who has not been convicted of a crime lacks good moral character? Well, the ten factors – Can you answer that question, yes? Yes, yes. There are ten factors under Section 1101F that go through the factors. And those are not all criminal-related. Habitual drunkenness and things of that nature are on that level. But I do think it's important that that charge was dismissed. And he did plead guilty to a misdemeanor charge, which is a very low-level charge. And he also – he was in this country for – he's been in this country for 25 years at this point. This was a five-year period of his life. Raul Cabrera was a friend of his. Are you saying that you can't have bad moral character through a misdemeanor conviction? I think it depends, Your Honor. I think that in this situation – That's the evidence of who – I mean, it's the conduct. Correct. In this situation, it was a friend of his that allowed him to use his ID. The only reason he used a false name. Yeah, the reason he – It's pretty bad stuff. He got a false driver's license and mortgage. His wife is very sick. She has pulmonary hypertension. And so this was to be able to drive her to the hospital, to relocate. Every fraud begins with, like, good motives, right? I mean, and I'm not saying that – I mean, I think an IJ could have reasonably found here that your client has good moral character. But an IJ could also reasonably find that he does not, right? I mean, that's the challenge I've got. I understand you have arguments, right, to say don't think about this fraud as being as bad as it looks. All right, that might – you might be right about that. But it's hard for me to see, whatever the standard is, that an IJ was required to conclude that a guy who not only used a false ID, but then used it to defraud, you know, two banks, is the person that must be found to have good moral character. I think that in this situation, the petitioner did go get his own driver's license, his own Social Security number. And I think that people have the ability to rehabilitate themselves. You know, he made a mistake. And I don't think that that's dispositive of him being of bad moral character. And ultimately, as I bring this argument to a close, I think that if the court reviews the transcript in this case, it will become obvious that from the beginning of the hearing, the immigration judge did not carefully consider the factors in this case and showed bias in the rulings that he made. And for these reasons and the reasons discussed throughout the course of my argument, I respectfully ask this court to vacate the ruling of the lower court or, on the alternative, to remand to the lower court for a new ruling based on this decision, the statutory and applicable case law. Thank you, Your Honors. Thank you very much. We appreciate your work. Hands up. We'll come down and re-counsel and then we'll go to the next case.
judges: Robert B. King, Julius N. Richardson, Henry F. Floyd